GILLILAND AND HOWELL *vs.* JOSEPH CALDWELL AND OTHERS.

H., a member of the firm of S. and H., died intestate in 1844, leaving some real estate, of which his heirs took possession, and C. administered on his personal estate. The firm was indebted, by promissory note, to G., who sued S., the surviving partner at law, and recovered judgment against him, but failing to obtain satisfaction, he, in 1847, exhibited a creditor's bill against C, for administration of the personal estate of H. Creditors were called in, accounts taken, and a report made, which showed that the personal assets were sufficient to pay 31⅝ per cent. of the debts, and no more, and in 1849 the report was confirmed. The heirs of H. remained in possession of the real estate, using it as their own, until 1863, when G. exhibited this bill against them, to subject the real estate to the payment of so much of the debts as remained unsatisfied: *Held,* That the bill was barred by the statute of limitations.

A judgment, or decree, against an administrator, for a debt of his intestate, due by simple contract, in a suit to which the heirs are not parties, does not preclude them from availing themselves of the bar of the statute of limitations, when the creditor institutes proceedings against them to subject descended real estate in their possession to the payment of the debt.

Though real estate may be levied on and sold under an execution against an executor or administrator, as such, yet the judgment does not otherwise bind the heir, and when he is sued the original cause of action must be established against him.

BEFORE JOHNSON, CH., AT NEWBERRY, SEPTEMBER, 1867.

The decree of His Honor the Chancellor is as follows:

JOHNSON, Ch. Taplow Harris, one of the members of the mercantile firm of Swindler and Harris, died in 1844, intestate, leaving surviving him his widow, Sarah Harris, and twelve children as his heirs at law. He left a tract of land, containing four hundred acres, more or less, and a small personal estate, but was insolvent, in consequence of the large indebtedness of Swindler and Harris. Soon after his death, James P. Caldwell administered upon his estate, and on the 25th day of May, 1847, a bill was filed in this Court, by the complainants, against him, as the administrator of the estate of Harris, alleging that Swindler was totally insolvent, and that he had wasted the assets of the firm of Swindler and Harris, and had removed from the State, and praying, amongst other things, that James P. Caldwell might be required to account for the personal estate of Taplow Harris, and certain assets of the firm of Swindler and Harris, which had gone into his possession. Upon coming in of the answer of the defendant, the creditors of the estate were called in by order of the Court, and the matters of account were referred to the Commissioner.

On the 30th day of June, 1848, the Commissioner made his report, from which it appeared that, after paying a few small judgments which had been recovered against Swindler and Harris, that the assets of the estate of Taplow Harris would be sufficient to pay 31⅘ per cent. of the debts due by it. From the report it appears that the complainants had, before filing their bill, prosecuted their claims to judgment against L. L. Swindler, the survivor of Swindler and Harris. Before the report was confirmed, James P. Caldwell died, leaving a will, and, on the 2d day of April, 1849, the proceedings were revived against Joseph Caldwell and William W. McMorris, the executors of said will, and the said report was confirmed.

There is no evidence that James P. Caldwell ever assumed any control over the land in any way. And the heirs at law of Taplow Harris were not made parties to the proceedings, and there was no effort made during the progress of the cause to subject the land to the payment of the debts of Taplow Harris.

Sarah Harris, the widow of Taplow Harris, continued, from the time of the death of her husband up to some time during the year

Gilliland and Howell *vs.* Caldwell.

1852, in possession of the land, holding it and using it as her own, and she then died intestate, leaving, as her heirs at law, the other heirs at law of Taplow Harris. And her son, James Y. Harris, administered upon her estate, and held the said tract of land in possession for the benefit of himself and other heirs, until the 6th day of April, 1863, when the bill in this cause was filed, for the purpose of subjecting the land to the payment of the unpaid portion of the debts of Taplow Harris.

To this claim the statute of limitations is interposed. At the time the intestate, Taplow Harris, died, the claims of the complainants were promissory notes. Is their character changed, so far as the liens are concerned, by the recovery of judgments *vs.* L. L. Swindler, as survivor? I think not. And if not, they are seeking to enforce claims which are barred by the statute of limitations. And, in addition to this, I think that the heirs at law of Sarah Harris have a good title to the land under the operation of the statute of limitations, even though the claims of the complainants may not be barred.

The executors of James P. Caldwell and L. L. Swindler are called upon by the bill to account for the assets which went into the hands of James P. Caldwell, and the assets of the firm of Swindler and Harris. The executors of J. P. Caldwell have heretofore accounted, and, in the judgment of the Court, it is now too late to call upon L. L. Swindler for an account of the assets of the firm of Swindler and Harris.

It is ordered and decreed, that the foregoing opinion be taken as the judgment of the Court.

It is also ordered and decreed, that the bill be dismissed.

The plaintiffs appealed, and now moved this Court to reverse or modify the same, on the grounds:

1. Because His Honor erred in holding that the statute of limitations intervened to protect the land described in the bill from liability for the payment of the claims of the creditors of Harris and Swindler, adjudicated and sanctioned by a decree of this Court, to which the administrator of Taplow Harris was a party.

2. Because the decree is otherwise contrary to the law and facts of the case.

*Jones & Baxter*, for motion.

*Garlington*, contra.

Oct. 8, 1869.   The opinion of the Court was delivered by

Moses, C. J.   It is not to be denied that, following the decision in *D'Urphey* vs. *Nelson*, 1 Brev., 476, also found in note, 4 McC., 129, and *Martin* vs. *Latta*, 4 McC., 128, the Courts of this State hold that the lands of a deceased are assets liable to be taken in execution on *fi. fa.* issued on a judgment recovered against his personal representatives.

The creditors of the intestate, Taplow Harris, do not, however, claim the benefit of the rule laid down in the cases above referred ·to.   If they regarded their debts, proved before the Commissioner, thenceforward holding rank as judgments against the estate, what prevents them from issuing their executions, and subjecting the land to sale under them?   If they thus have a medium through which they can enforce their " established demands" to satisfaction, why seek the aid of the Court of Equity to subject the real estate of the intestate to their payment?   Their prayer, that the land may be made liable by the decree of the Court, concedes that, as against the heirs, they do not hold the more favored position of a general creditor by judgment.   They do not assume that they have any such lien, for, if they had, they would have applied to the Court for its process of execution to enforce it.   So far, however, from this, they seek the aid of equity jurisdiction to require that the heirs at law shall be called in, an account taken of the real assets descended, and their application directed to the satisfaction of the debts.

It is proper, first, to inquire as to the effect of the order of the Court establishing their demands as simple contract debts against the estate of Harris.   What consequence is to follow the right thus acquired, either as binding on the administrators or the heirs?

The decree was based on an order *quod computet*.   It was necessary to ascertain the amount of the estate in the hands of the administrator, so that, if not sufficient to satisfy all the claims presented, a *pro rata* payment might be ordered.   The judgment against Swindler, as survivor of Swindler and Harris, on the copartnership debt, created no lien against the estate of Harris.   It merely merged the simple contract debt, so that a remedy on it could not be enforced at law against his administrator.

If the rule which prevails in equity on bills for marshalling assets had been strictly carried out, the amount found due by the administrator on the account taken should have been

brought into Court, and the several creditors paid by the Commissioner.

This not being done, the *pro rata* amount for each creditor remained in the hands of the administrator, and the several debts, to the extent of the fund, stood established as a liability against him. The assets were left with him for distribution, and the non-payment would establish a *devastavit.* They were specifically appropriated by the Court, and the decree on the debt was analogous to a judgment at law against the administrator of assets *quando occiderent* on a plea of *plene administravit prœter.* What liability, then, was imposed on the heirs at laws?

It is claimed by the plaintiffs, on the ground that the personal estate of the intestate being exhausted, the realty in their hands must respond for the deficiency.

The general proposition is not controverted, but the difficulty the plaintiffs encounter is, to apply it to the case in hand.

The demand was established as a simple contract debt. If by the decretal order it acquired any higher rank, as against the administrator, it was not converted into a judgment of the Court so as to affect the heirs who were not parties to it.

The statute of George II does make descended lands in the possession of the heirs liable for the payment of the debts of the ancestor; but the cause of action must be established against them in a suit to which they are parties, and they are not bound by a judgment against the administrator, to which they are neither parties or privies.—*Bird* vs. *Houze,* Speer's Eq., 250; *Vernon & Co.* vs. *Valk et ux.,* 2 Hill Ch., 257; *Drayton* vs. *Marshall,* Rice Eq., 387.

Whatever may be the character of the demands in the equity suit, and whatever place they may hold against the administrator in relation to the estate of the intestate, they stand but as simple contract debts against the heirs. These were not parties to the bill, and its whole aspect is inconsistent with any pretense that they are bound by it, because of real assets descended.

In the language of Chancellor Dunkin, in *Bird* vs. *Houze,* " the cause of action must be established against the heir, and he is not bound by the judgment against the executor or administrator."

Even if the cause of action was so established as to conclude the heir from averring against it in the proceedings before the Court, it has acquired, in reference to him, no higher grade than it occupied in relation to the testator at his death, as a simple contract,

and it is therefore barred by the statute of limitations, as against the heir.

Although the Court of Equity does not assume to try the title to land, yet, incidental to its jurisdiction, when relief is there sought against the party in possession, it must determine whether the character of the possession is of a kind which allows it to be affected or disturbed by its decree. Here the heirs at law of Harris have been in the undisturbed use and occupation of the real estate, by themselves and tenants, exercising acts of ownership since his death, in 1844, and no sufficient equity has been shown which should act directly upon their legal rights, by subjecting them to the claim of creditors, who, to say no more, have been guilty of a laches which prevents any interference on their behalf.

The motion is dismissed, and the decree of the Chancellor affirmed.

*Willard,* A. J., concurred.